## IN RE THE REPRESENTATIVE ELECTION.

When an election for Representative in Congress has resulted in a failure to elect a Representative, the General Assembly in Grand Committee, after counting the votes, may order a new election without a concurrent vote of the two houses of the Assembly.

Such an order made in Grand Committee for an election to take place February 21, 1891, held valid.

### SENATE RESOLUTION REQUESTING THE OPINION OF THE SUPREME COURT.

#### · Adopted January 30, 1891.

WHEREAS, the Constitution of this State, article 4, section 2, determines the method of the enactment of laws by the General Assembly ; and,

WHEREAS, sections 5 and 6 of chapter xi. of the Public Statutes provide for the ordering of a new election for Representative in Congress in certain cases ; and,

WHEREAS, the General Assembly have, by concurrent vote of the two houses, adopted a joint rule and order, being Rule 23 of the Joint Rules and Orders of the General Assembly, as follows: "No business shall be entered upon in Grand Committee other than that named in the invitation to meet in Grand Committee;" and,

WHEREAS, the House of Representatives, on the 20th day of January, A. D. 1891, passed the following resolution inviting the Senate to join the House of Representatives in Grand Committee, to wit: "*Resolved,* That the General Assembly meet in Grand Committee, Friday, January 23, 1891, at 12 o'clock M., for the purpose of counting the ballots cast for Representatives to Congress in the First and Second Congressional Districts of this State, November 4, 1890; also to elect notaries public and justices of the peace, and to nominate candidates for state scholarships in Brown University," which invitation was accepted by the Senate; and,

WHEREAS, on the 27th day of January, A. D. 1891, the General Assembly, being met in Grand Committee in pursuance of such invitation, and it having appeared, upon the counting of the ballots cast for Representative to Congress in the Second Congressional District in this State on November 4, 1890, that no person had a majority of the legal votes cast in such election, said General Assembly, while in Grand Committee as aforesaid, by vote of said Grand Committee and not by concurrent vote of the two houses, adopted a resolution ordering an election of Representative in the Fifty-Second Congress of the United States for the Second Congressional District of Rhode Island, as follows: "*Resolved,* That ward, district, and town meetings be holden in the several cities and towns in the Second Congressional District of this State on the 21st day of February, A. D. 1891, for the purpose of electing a Representative in the Fifty-Second Congress of the United States from said district. The votes given in at such election shall be sealed up according to law, and transmitted within three days from and after said election to the office of the Secretary of State; and said votes shall, within five days after the expiration of the said three days, be counted by the Governor, who shall declare the election, and furnish a certificate thereof to the person who shall

be elected, according to the provisions of section 6 of chapter 11 of the Public Statutes.

" *Resolved,* That the Secretary of State transmit a copy of this resolution, with all necessary forms and directions, to the several town and city clerks in said district, who shall issue their warrants for the holding of said meetings in the manner required by law ; " and,

WHEREAS, the validity of said resolution has been called in question by reason of the alleged conflict between the manner of its adoption and said provisions of the Constitution and laws of the State and of the said joint rule of the General Assembly ; and,

WHEREAS, the Constitution provides that either house of the General Assembly may request the opinion of the judges of the Supreme Court upon any question of law ; it is, therefore, hereby

*Resolved,* That the said judges of the Supreme Court be, and are hereby, requested to give their opinion to the Senate upon the following questions : —

1st. May the General Assembly, while in Grand Committee, and without the concurrence of the two houses thereof, order a new election for Representative in Congress ?

2d. Is the aforesaid resolution, adopted by the General Assembly while in Grand Committee as aforesaid, valid and effectual to authorize the holding of ward, district, and town meetings in the several cities and towns in the Second Congressional District of this State on the 21st day of February, A. D. 1891, for the purpose of electing a Representative in the Fifty-Second Congress of the United States from said district ?

*Resolved,* That the Secretary of State be, and he is hereby, instructed to transmit a certified copy of this resolution to the judges of the Supreme Court forthwith.

<br>

OPINION OF THE COURT.

*February* 6, 1891.

*To the Honorable the Senate of the State of Rhode Island and Providence Plantations :* —

To the questions proposed in the resolution recently adopted by

your honorable body we make answer as follows: The Constitution
of the United States declares that "the times, places, and manner
of holding elections for Senators and Representatives shall be pre-
scribed in each State by the Legislature thereof; but the Congress
may at any time by law make or alter such regulations, except
as to the place of choosing Senators." Congress has by law pre-
scribed a time for holding the regular biennial elections for Rep-
resentatives, and provided that the times for holding elections to
fill vacancies, whether caused by failures to elect at that time, or
otherwise, "may be prescribed by the law of the several States
. . . respectively." The General Assembly of this State has
provided that, in case of any such failure to elect, "the General
Assembly shall order a new election, at such time as it shall deem
most expedient," and that "the ballots given at such election shall
be returned to, examined, and counted by the General Assembly,
or by the Governor, at such time as the General Assembly shall
direct." The General Assembly does not by this provision pre-
scribe the time for such new election in any strict sense of the
word, but rather prescribes the manner in which the time shall
be prescribed. Does the provision meet the requirements of the
United States Constitution or law? It was presumably intended
to do so, and we are not prepared to say that it does not. It estab-
lishes a procedure by which, as occasion requires, an appointment
of the time is effected. The United States House of Representa-
tives, which is in this matter the final arbiter, has hitherto shown
a disposition not to insist upon a literal compliance with the law,
but to be satisfied with such a compliance as practically answers
its purposes. Assuming that the provision is sufficient, we come
immediately to the question put to us, namely, whether it is com-
petent for the General Assembly, after counting in Grand Com-
mittee the votes given for a Representative to Congress at a regu-
lar election, and ascertaining a failure to elect, directly thereupon,
while still in Grand Committee, to order a new election at a time
specified in the order, or whether the order, to be valid, must be
made by a concurrent vote of the two houses. The practice
hitherto has been for the two houses, after counting the vote in
Grand Committee and declaring the result, to separate, and after-
wards, in case of failure to elect, to order a new election by con-

current resolution.  Such a practice is unquestionably valid.  If the votes were counted without going into Grand Committee, the order would, as a matter of course, be so made.  But because the order so made is valid, it does not follow that it is invalid if made by the General Assembly in Grand Committee.  The suggestion is, that the order is a law, and that necessarily, by the Constitution of the State, a law, to be valid, must be passed by the concurrent vote of the two houses.  In this matter, however, the General Assembly acts, not under the state Constitution, but under the Constitution and law of the United States, and under its own statute passed to meet the requirements thereof, and if that statute is sufficient it is not clear to us that the order must be regarded as a law.  In some of the States, among which are Massachusetts and New Hampshire, the Governor is authorized by the statute of the State, in case of failure to elect at the regular election, to issue his order or precept for a new election at a time to be designated in such order or precept.  If such an order is necessarily to be regarded as a law, a governor could not be authorized to make it.  If the Governor can be authorized, why not the General Assembly in Grand Committee?  Suppose the General Assembly were specially authorized to make the order in Grand Committee, would not the order, if made as so authorized, be as valid as if made by a governor similarly authorized?  We think there is little doubt that it would be.  The General Assembly, in making the order, would act, not legislatively, but under the statute, in the performance of a function prescribed by the statute to carry it into practical effect.  In fact, however, the authority was given without mention of the Grand Committee, and the question arises whether, having been so given, it is not to be understood as given to be exercised in the two houses in the usual manner.  The question is certainly one that raises serious doubt, for ordinarily, where power is given to be exercised in Grand Committee, it is given expressly to be so exercised.  It is to be noted, however, that, in the particular instance which we are now considering, the General Assembly not only made the order in Grand Committee without being expressly authorized to make it there, but also examined and counted the votes there without being expressly authorized so to do.  The validity of its action in the latter particular is not questioned, being in

accordance with ancient usage, and, upon the whole, considering the immediate connection which the statute establishes between the count and the ordering of a new election in case the count shows a failure to elect, we are not satisfied that the General Assembly in making the order in Grand Committee acted without authority.

Our answer to the two questions proposed is, therefore, that it was competent for the General Assembly to order the new election in Grand Committee without any concurrent vote by the two houses, and that the resolution ordering the same is valid and effectual to authorize the holding of an election on the 21st day of February, A. D. 1891, in the several cities and towns in the Second Congressional District, for the purpose of electing a Representative in the Fifty-Second Congress of the United States from said district.

Thomas Durfee.

Charles Matteson.

John H. Stiness.

P. E. Tillinghast.

George A. Wilbur.